**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

MIDLAND FUNDING LLC,　　　　　)
Assignee of CITIBANK, N.A.　　　　)
(SEARS PREMIER CARD),　　　　　)
　　　　　　　　　　　　　　　　　)
　　　Plaintiff-below Appellant,　　　)
　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　)　　　C.A. N15A-01-008 AML
　　　　　　　　　　　　　　　　　)
ERMA GRAVES,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　Defendant-below/Appellee.　　　)
　　　　　　　　　　　　　　　　　)

Submitted: February 15, 2016
Decided: April 7, 2016

**ORDER**

**On appeal from a decision of the Court of Common Pleas: AFFIRMED.**

This is an appeal from a decision of the Court of Common Pleas in a consumer debt action. The assignee of the original creditor filed the action, seeking payment of an overdue debt. On the day of trial, the trial judge granted judgment in favor of the debtor after ruling inadmissible an affidavit the assignee sought to offer to prove the debt's existence and its assignment to the plaintiff. The assignee filed this appeal.

**Procedural History**

On September 8, 2014, Midland Funding, LLC ("Midland") filed an action against Erma Graves to collect a $3,150.08 debt. The debt was a Citibank, N.A., Sears credit card account that Citibank allegedly assigned Midland. Graves filed an answer to the Complaint, admitting most of the allegations.[1] Specifically, Graves admitted: (1) she "defaulted on the Account by failing to make the payment due;"[2] (2) there is "now due and owing from defendant to plaintiff the principal balance of $3,150.08;"[3] and (3) "Defendant is indebted to Plaintiff based on Account stated above."[4]

Midland and Graves appeared for trial on January 9, 2015. Midland argued that because Graves admitted the allegations in her answer, there was nothing more to prove and judgment should be entered against Graves. Midland attempted to move into evidence certain business records purportedly establishing both the amount of the debt and the assignment from Citibank to Midland. To admit the evidence, Midland relied on an affidavit from Lori Thielen-Nelson, who was an officer of Midland and a "legal specialist" of Midland Credit Management, Inc. ("MCM"), the entity that services Midland's accounts (the "Midland Affidavit").[5]

---

[1] Appellant's Opening Br. App. A-16 ("App.").
[2] Ans. to Compl. ¶ 3.
[3] *Id.* at ¶ 4.
[4] *Id.* at ¶ 6.
[5] App. A-20.

In a letter dated December 8, 2014, Midland sent Graves a copy of the Midland Affidavit and attached records and indicated the affidavit would be introduced at trial. In the letter, Midland explained the affidavit "demonstrate[s] the correct amount owed on [Grave's] Citibank, N.A. account."[6] The letter did not notify Graves that the records also would be introduced to establish the assignment of the debt from Citibank to Midland.

The records to which the Midland Affidavit refers include a bill of sale and assignment (the "Assignment"),[7] an affidavit of sale of account by original creditor (the "Affidavit of Sale"),[8] and credit card statements.[9] The Assignment from Citibank to Midland, dated February 24, 2014, offers no specific information as to which accounts were sold, referring only to "the Accounts described in Exhibit 1 and the final electronic file."[10] Exhibit 1, however, is redacted almost completely, leaving no account information whatsoever.[11]

The Affidavit of Sale, dated March 3, 2014, was executed by Patricia Hall, who was the financial account manager of Citibank, N.A., and states: "I have access to the creditor's books and records and am aware of the process of the sale of accounts and electronic storage of business records. . . . As part of the [February

---

[6] *Id.* at A-19.
[7] *Id.* at A-23.
[8] *Id.* at A-25.
[9] *Id.* at A-28 through A-31.
[10] *Id.* at A-23.
[11] *Id.* at A-24.

3

24, 2014] sale of the Accounts, certain electronic records were transferred on individual accounts to the debt buyer."[12] Although the Affidavit of Sale states that the affiant is "not aware of any errors in the information provided about the Accounts," it provides no more information than that Citibank "sold a pool of charged-off accounts."[13]

The Midland Affidavit refers to attached records and a "data sheet," which allegedly "contain[s] account data printed by MCM, without alteration or modification, directly from electronic records provided by [Citibank] in connection with the sale of the account."[14] The data sheet consists of the debtor's account information, and at the bottom it states: "Data printed by Midland Credit Management, Inc. from electronic records provided by Citibank, N.A. pursuant to the Bill of Sale / Assignment of Accounts transferred on or about 2/24/2014 in connection with the sale of accounts from Citibank, N.A. to Midland Funding, LLC."[15]

The Court of Common Pleas refused to admit the evidence because Midland did not have a business records custodian present to testify at trial.[16] Midland's counsel argued that the affidavit was sufficient to admit the evidence under

---

[12] *Id.* at A-25.
[13] *Id.*
[14] *Id.* at A-21; *see* A-27.
[15] *Id.* at A-27.
[16] *Midland Fund, LLC v. Graves*, CPU4-14-002577, at 4, 5, 8 (Del. Com. Pl. Jan. 9, 2015) (TRANSCRIPT) ("Tr.").

Delaware Rules of Evidence ("D.R.E.") 803(6)[17] and 902(11).[18] The Midland Affidavit states that "[Midland] purchases portfolios of delinquent accounts . . . and contracts with its affiliate, MCM, to service the accounts on [Midland]'s behalf;" "MCM holds the computer records and account information for accounts purchased by [Midland];" the affiant has "access to" and has "reviewed the electronic records pertaining to the account" and is "authorized to make this affidavit on [Midland]'s behalf;" and the affiant is "familiar with and trained on the manner and method by which MCM creates and maintains its business records pertaining to this account."[19]

The court rejected that argument, reasoning that a business custodian was required to testify and holding that: "If you're seeking to get those documents in through the evidence rules without a business records custodian, I find that that's not an acceptable matter here."[20] The trial judge stated that Graves could not "admit to a transfer of the debt that she knows nothing about and doesn't understand" and that the proffered affidavit was not an acceptable way to move the

---

[17] D.R.E. 803.6 Records of regularly conducted activity (allowing the introduction of records of regularly conducted activity if it is accompanied by testimony or "certification that complies with D.R.E. 902(11), D.R.E. 902(12) . . . .").

[18] D.R.E. 902(11) Certified domestic records of regularly conducted activity (Records are "admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person . . . certifying that the record (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice.").

[19] App. A-20.

[20] Tr. 7.

5

evidence into the record.[21] The court below did not reach the issue of whether the evidence, if admitted, was sufficient to satisfy Midland's burden to prove the assignment of the debt. Midland had nothing else to present. The Court therefore entered judgment for Graves.[22] Midland filed a timely appeal on January 23, 2015.[23]

**The Parties' Contentions**

Midland's appeal is based on one argument: the trial court improperly refused evidence that should have been accepted as business records.[24] Graves' response consists of two sentences:

> I am requesting the courts to strike Midlands's[sic] business records that Mr. Yeager attempted to submit into evidence via Affidavit at the January 9, 2015 trial, and my Answer from October 22, 2014 from Yeager's Opening Brief, dated August 13, 2015. Based on no new evidence, I ask the Superior Court to uphold the decision rendered at the lower court and to please dismiss.

**Analysis**

This Court "reviews evidentiary rulings by the Court of Common Pleas under an abuse of discretion standard."[25] "An abuse of discretion occurs when 'a court has . . . exceeded the bounds of reason in view of the circumstances,' [or] . . .

---

[21] *Id.* at 8.

[22] *Id.* at 10 ("[T]he state is finding a Judgment for you[, Graves].").

[23] Super. Ct. Civ. R. 72(b) ("If no time is prescribed by statute, the notice of appeal shall be filed within 15 days from entry of the final judgment, order, or disposition from which an appeal is permitted by law.").

[24] Appellant's Opening Br. 9.

[25] *City of Wilmington v. Flamer*, 2013 WL 4829585, at *4 (Del. Super. May 22, 2013) (citing *Del. Acceptance Corp. v. Swain*, 2012 WL 6042644, at *6 (Del. Super. Nov. 30, 2012)).

so ignored recognized rules of law or practice . . . to produce injustice."[26] "[T]o find reversible error in an evidentiary ruling, [the court] must find not only error in the ruling, but that a "substantial right of the party is affected."[27] If the reviewing court determines that the lower court abused its discretion, the court then must consider whether the act resulted in significant prejudice.[28]

The court below erred in its holding that Midland was prohibited from admitting the business records without a business custodian's live testimony. To the extent the lower court's ruling suggests that a custodian must testify before a court will admit business records into evidence, that ruling is at odds with D.R.E. 803(6), which permits admission of records of regularly conducted activity if accompanied by testimony *or* "certification that complies with D.R.E. 902(11)."[29] The record contains nothing that indicates the court below considered whether the Midland Affidavit complied with D.R.E. 902(11). If the Midland Affidavit complied with the rules, the affidavit and accompanying records should have been admitted into evidence. Graves' status as a self-represented litigant does not alter the rules of evidence.

---

[26] *Del. Acceptance Corp.*, 2012 WL 6042644, at *3 (quoting *Culp v. State*, 766 A.2d 486, 489 (Del.2001)).

[27] *Mercedes-Benz of N. Am. Inc. v. Norman Gershman's Things to Wear, Inc.*, 596 A.2d 1358, 1365 (Del. 1991).

[28] *Harper v. State*, 970 A.2d 199, 201 (Del. 2009).

[29] D.R.E. 803(6).

7

That conclusion, however, does not require reversal of the lower court if I conclude that the error was harmless because the court's judgment may be affirmed on independent grounds.[30] In my opinion, there are two independent grounds on which the judgment in favor of Graves may be affirmed. First, Midland failed strictly to comply with the notice requirement in D.R.E. 902(11). Second, the evidence Midland sought to admit was insufficient to establish the debt's assignment.

Turning first to the notice issue, Rule 902(11) provides that a record of regularly conducted activity may be authenticated by a written declaration of its custodian or other qualified person certifying that the record:

(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

(B) was kept in the course of the regularly conducted activity; and

(C) was made by the regularly conducted activity as a regular practice. *A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties*, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.[31]

Although Midland notified Graves of its intent to offer the records at issue into evidence, Midland indicated the records were being offered to establish the amount

---

[30] *See Roman Oil Co. v. Bibbs*, 2013 WL 1143630 (Del. Super. Mar. 14, 2013).
[31] D.R.E. 902(11).

8

of the debt Graves owed. In view of Graves' self-represented status, the notice was misleading as to the documents' purpose. This is particularly true since Graves was not challenging the amount of the debt. By indicating to a self-represented litigant that the records were being offered for one purpose, but then attempting to admit them for a different purpose, Midland violated the spirit, if not the letter, of D.R.E. 902(11).

In addition, even if the Midland Affidavit and accompanying records were admissible under the rules of evidence, the records were not sufficient to establish the assignment from Citibank to Midland. The proffered evidence shows:

1. Citibank sold and assigned to Midland a series of accounts described in an exhibit attached to the bill of sale.[32]

2. The exhibit attached to the bill of sale refers to individual accounts "described in the final electronic file" delivered to Midland.[33]

3. Citibank sold Midland a pool of "charged off" accounts and, as part of the sale, transferred to Midland "certain electronic records . . . on individual accounts."[34]

4. Midland has in its files the electronic records for Graves' Citibank Sears credit card, which Midland represents were transferred in connection with the sale of accounts from Citibank to Midland.[35]

---

[32] App. A-23.
[33] *Id.* at A-24.
[34] *Id.* at A-25, A-26.

9

5. The account statements reflect a balance of $3,150.08 on Graves' credit card.[36]

The proffered evidence is missing one key piece: direct documentation that Graves' account was one of the accounts Citibank sold to Midland. In a consumer debt action, the purported assignee of the creditor has the burden to prove the assignment in order to establish standing.[37] This Court and the Court of Common Pleas have held that a plaintiff must offer specific proof showing the assignment or sale of the account at issue to the plaintiff.[38] This, Midland has not done; there is no evidence listing Graves' account as one of the accounts Citibank sold Midland. The proffered evidence would require the Court to make the inference that Graves' account must have been included in the sale since Midland now has possession of the electronic files for Graves' account. This inference, although fair, does not meet Midland's burden of proof.

Based on the foregoing, the Court of Common Pleas' decision is **AFFIRMED.**

**IT IS SO ORDERED.**

Abigail M. LeGrow, Judge

---

[35] *Id.* at A-27.

[36] *Id.* at A-28 through A-31.

[37] *Midland Funding, LLC v. Hanby*, 2015 WL 738060, at *4 (Del. Com. Pl. Feb. 23, 2015).

[38] *Klinedinst v. CACH, LLC*, 2015 WL 3429941, at *3-4 (Del. Super. May 22, 2015); *Hanby*, 2015 WL 738060, at *5.

Original to Prothonotary
cc:   Seth H. Yeager, Esquire
      Ms. Erma Graves, *pro se,* via Fist Class Mail